IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOAN M. HEINZ and RON HEINZ,           )
                                        )
                   Plaintiffs,          )          8:08CV369
                                        )
          v.                            )          FINDINGS OF FACT AND
                                        )          CONCLUSIONS OF LAW
UNITED STATES OF AMERICA,               )
                                        )
                   Defendant.           )
_____ )

This matter is before the court for resolution after a trial to the court.[1]  This is an

action for damages for personal injury and loss of consortium as a result of alleged

negligence of the United States in connection with a slip-and-fall incident at the Offutt Air

Force Base Commissary in Bellevue, Nebraska.  This court has jurisdiction under the

Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.*

I.  FINDINGS OF FACT

The parties have agreed that the following may be accepted as established facts.

See Filing No. 76, Pretrial Order at 1-4.  The plaintiffs filed administrative claims for

damages for personal injuries pursuant to the Federal Tort Claims Act on or about July 19,

2007.  On August 15, 2008, they filed a timely complaint in the United States District Court.

The plaintiffs are residents of Papillion, Sarpy County, Nebraska.

The Defense Commissary Agency (hereinafter, "DeCA"), an agency of the

Department of Defense, manages the Commissary.  The acts complained of occurred in

the judicial district of Nebraska.  On September 10, 2006, at about 1:30 or 2:00 in the

_____

[1]The court took the parties' motions for judgment as a matter of law under advisement at the time of
trial.  Those motions are moot in light of these findings.

afternoon, Mrs. Heinz was shopping at the meat counter at the commissary. She fell and broke her hip. On or about September 10, 2006, shortly after becoming aware that Mrs. Heinz had fallen, Commissary Director Tresenriter took two photographs of the floor-mounted railing system located in front of the meat case at the Commissary. On September 10, 2006, after her fall, Mrs. Heinz went by ambulance to the urgent care clinic at Ehrling Bergquist Clinic. On September 22, 2006, Mrs. Heinz was seen at Ehrling Bergquist Clinic by Dr. Jon Shereck. On September 24, 2006, Mrs. Heinz had surgery at the Creighton University Medical Center on her left hip. Dr. Shereck inserted a dynamic hip screw plate to the lateral aspect of her proximal femur and secured the plate in place with a dynamic hip screw. From September 27, 2006, to October 7, 2006, Mrs. Heinz was given inpatient therapy at Hillcrest Rehabilitation. From October 8, 2006, through October 23, 2006, Mrs. Heinz received in-home nursing care from the Visiting Nurse Association.

On October 11, 2006, Mrs. Heinz had her first post-operative appointment with Dr. Shereck at Ehrling Bergquist Clinic. From October 24, 2006, to January of 2007, Mrs. Heinz received physical therapy from Ehrling Bergquist Clinic related to her left hip surgery. On November 8, 2006, Mrs. Heinz had her second post-operative appointment with Dr. Shereck at Ehrling Bergquist Clinic. On January 3, 2007, Mrs. Heinz had her third post-operative appointment with Dr. Shereck at Ehrling Bergquist Clinic. On March 26, 2007, Mrs. Heinz had her fourth and final post-operative appointment with Dr. Shereck at Ehrling Bergquist Clinic.

Tri-Care, specifically TriWest Healthcare Alliance, provides the equivalent of insurance to members of military families. In Mrs. Heinz's case, Tri-Care paid for all medical treatment from the surgery and aftercare for her, except for $253.12 which was

paid by Mr. and Mrs. Heinz.  Joan M. Heinz and Ronald Heinz are limited to damages recoverable under the Federal Tort Claims Act and Nebraska statutory and/or common law.  Such claims may not exceed the amount claimed in Mrs. Heinz's administrative claim of $1,000,000.00, and Mr. Heinz's administrative claim of $1,000,000.00.  Attorney fees are limited to not more than 25 percent of any judgment or settlement, and must be taken from such judgment or settlement.  Mr. and Mrs. Heinz are not entitled to prejudgment interest.  Defendant United States, by and through the Department of the Air Force, owns the Offutt Air Force Base Commissary (hereinafter "Commissary") located in Bellevue, Nebraska.  The floor-mounted railing system in front of the meat case at the Commissary spanned the entire length of the meat case.  Mrs. Heinz was shopping at the meat counter at the Commissary.

The United States of America, as the occupier and operator of the Commissary located at Offutt Air Force Base in Bellevue, Nebraska, owed a duty to lawful entrants, including Joan M. Heinz, to use reasonable care in the maintenance of the premises for the protection of lawful entrants.

Based on the evidence adduced at trial, the court makes the following factual findings.  A floor-mounted rail system was installed at the Commissary by Nelson Refrigeration at the direction of the Defense Commissary Agency.  The rail system was designed to protect the meat cases from damage by shopping carts.  The rails operate as "bumpers" to prevent the carts from coming in contact with the refrigerated meat cases. They are mounted to the floor with vertical struts and the rails extend into the vertical plane of the sides of the meat cases by four inches.  The horizontal bumper guards and the

vertical struts that underlie them are visible as one approaches the meat counter from a distance.

Mrs. Heinz testified that she had shopped at the Commissary on many occasions and had frequently retrieved items from the refrigerated meat cases.  On the day she was injured, she turned to put some meat in her shopping cart, her right foot became stuck under the rail, and she fell to the floor and incurred injuries.

The present store supervisor, Anthony Chaki, also testified at the trial.  He stated that the purpose of the bumper guards was to keep carts from hitting the meat cases.  He further testified that on the day of the incident over 800 customers had purchased items from the meat cases.  Sam Tresenriter, who had been the store manager on the day of the incident, also testified.  He testified he had no other reports of falls due to the rail-mounted bumper system and that he had never seen a fall like this before the incident.  His staff prepared an incident report about the accident.  See Ex. 107.  Tresenriter testified that another employee told him that another person had fallen near the meat counter, but he had no reports of falls due to the bumper system prior to this and did not know the specific details of the other fall.

Steven Carmichael testified as an expert for the plaintiffs. He is the Chief of Permits and Inspections for the City of Bellevue, Nebraska.  He has studied construction engineering at the University of Nebraska at Omaha.  He administers the International Building Code ("IBC" or "the Code") and the Nebraska Accessibility Act for the City of Bellevue, Nebraska.  He testified that he inspected the floor-mounted rails or bumper-guards at issue after the incident.  He testified that, in his opinion, the bumper guards violated several provisions of the 2006  building code in that they were an obstruction of

4

the aisle.  He also testified that the bumper guards violated ingress and egress codes, as well as code provisions designed to provide accessibility to disabled people.  On cross-examination, he admitted that the 2003 Code, and not the 2006 Code, applied to the case and acknowledged that his expert report did not state that the Commissary was in violation of the 2003 Code.  He also conceded that a similar bumper guard is in place at another grocery store in his jurisdiction and that no code enforcement action had been taken against that facility.

Susan Kelley, a retired City of Omaha certified building inspector and former Permits and Inspections Department head, testified as an expert for the defendant.  She visited the Commissary and took measurements.  She testified that the 2003 IBC was in effect when the project was authorized in 2005, and that it applied to the project.  She stated that, in her opinion, the meat cases and bumper guards did not violate the building code.  The term "obstruction" is not defined in the code, but she stated that she interprets it to mean anything that blocks or prohibits access.  She testified that the rails did not obstruct the aisles or hamper ingress or egress.  She stated that the Code is satisfied because the aisle width in front of the meat case and rail is greater than 36" at its narrowest point.  She testified that the IBC's so-called "obstruction provision" is not applicable because the bumper guard does not encroach on the required 36" aisle width.  She further testified that there were no violations of handicapped-accessibility code provisions because the meat cases are not point-of-sale or service counters, but are self-service counters to which side access provisions did not apply.  Accordingly, Ms. Kelly testified that the accessibility sections of the IBC on which Mr. Carmichael relied in forming his opinion did not apply to the meat cases and railings.  She stated that even if accessibility provisions were to apply,

5

the meat cases were accessible because a wheel-chair-bound side approach satisfies code provisions.

## II.   CONCLUSIONS OF LAW

### A.   Law

Under the Federal Tort Claims Act, this court has jurisdiction over any claim against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Nebraska law governs this dispute. *Budden v. United States*, 15 F.3d 1444, 1449 (8th Cir. 1994).

Generally, in order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Washington v. Qwest Communications Corp.*, 704 N.W.2d 542, 549 (Neb. 2004). In a premises liability case, a plaintiff is required to adduce evidence showing that there was a negligent act on the part of the defendant and that such act was the cause of the plaintiff's injury. *Herrera v. Fleming Companies, Inc.*, 655 N.W.2d 378, 382 (Neb. 2003). The law imposes a specialized standard of care on the owners or occupiers of premises, and an ordinary duty of care on lawful visitors to the premises. *Aguallo v. City of Scottsbluff*, 678 N.W.2d 82, 89 (Neb. 2004). The duty of care owed a lawful entrant upon land by the landowner or occupier is that of reasonable care. *Caguioa v. Fellman*, 747 N.W.2d 623, 627 (Neb. 2008) (noting that there is no longer any distinction between invitees and licensees under Nebraska law); *see*

6

*also Heins v. Webster County*, 552 N.W.2d 51, 57 (Neb. 1996) (stating that owners and occupiers of land are not insurers of their premises, and they have a duty only to exercise reasonable care in the maintenance of their premises for protection of lawful visitors). Whether there has been a breach of the duty of reasonable care is a question of fact based on the circumstances of each individual case. *Heins,* 552 N.W.2d at 57.

An owner or occupier of land is liable for injuries caused to lawful visitors by a condition on the land if: (1) the owner or occupier of the land created the condition, knew of the condition, or, by the exercise of reasonable care, would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the visitor; (3) the owner or occupier should have expected that a lawful visitor either (a) would not discover or realize the danger or (b) would fail to protect against the danger; (4) the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) the condition was a proximate cause of damage to the visitor. *Aguallo,* 678 N.W.2d at 88; *Herrera,* 655 N.W.2d at 383. To determine whether an owner or occupier of land failed to use reasonable care to protect the visitor against the danger under subsection (4) above, the court, as fact-finder, considers: (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the owner or occupier and/or community in terms of inconvenience or cost in providing adequate protection. *Herrera,* 655 N.W.2d at 381-82.

Generally, when the danger posed by a condition is open and obvious, the owner or occupier is not liable for harm caused by the condition. *Aguallo*, 678 N.W.2d at 93. However, in spite of the fact that the danger may be open and obvious or known, the possessor of the land may owe the duty if he should expect that the lawful visitor will fail to protect himself against the hazard. *Id.* Owners or occupiers are not liable unless they have actual or constructive knowledge of the dangerous condition. *See, e.g., Lenzen v. JG Shopping Ctr. Mgmt., LLC*, 2006 WL 2346367 (Neb. App. 2006).

In order to subject a possessor of land to liability, Nebraska law requires that the possessor "should have realized" that a condition on the land involved an unreasonable risk of harm to the lawful visitor. *See Herrera*, 655 N.W.2d at 382 (2003). Expert evidence that the premises are in compliance with regulations is sufficient to establish a presumption that the area does not contain a defect and that the owner or occupier would not therefore have realized that a condition involving unreasonable risk of harm existed. *Sall v. Kei Bldg, L.L.C.*, 2005 WL 2206065 (Neb. Ct. App. 2005). While circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of the plaintiff's injury. *Herrera*, 655 N.W.2d at 383. The mere fact that an injury or accident occurred does not raise a presumption of negligence. *Id.*

### B. Analysis

The plaintiffs allege that the defendant breached its duty of reasonable care by violating the IBC and by placing an unreasonably unsafe bumper-guard in front of its meat counter. They argue that the IBC was not followed with respect to provisions relating to ingress/egress and failure to provide an accessible approach to the meat counter.

8

Essentially, plaintiffs contend that the IBC establishes appropriate safety standards and that if the IBC had been followed, the offending bumper guards would not exist.  Without the offending bumper guards, the plaintiff Mrs. Heinz would not have tripped, fallen and fractured her hip.

The court finds that the plaintiffs have failed to meet their burden of proving the elements of a premises liability claim under Nebraska law.  Plaintiffs have not established that the defendant failed to use reasonable care to protect Mrs. Heinz from a dangerous condition on its property.  The court finds there is a failure of proof of the element of whether the floor-mounted railing system created an unreasonable risk of harm to Mrs. Heinz.  The plaintiffs have not proved that the bumper guards were unsafe.  Further, even assuming an unreasonable risk of harm,  the plaintiffs have not shown that the defendant knew or should have known of the dangerous condition.  They have presented no evidence that the construction or design of the meat-counters and bumper-guards railings was improper, unsafe, or defective.

In making this determination, the court credits the expert testimony of the defendant's expert witness, Ms. Kelley.  Ms. Kelley is the former director of the Permits and Inspection Department for the City of Omaha.  For over 30 years she enforced and implemented the IBC as amended by the State of Nebraska and the City of Omaha.  She also participated in the initial formulation of the IBC and demonstrated her proficiency by passing certifying examinations administered by the IBC's governing body.  The court finds that she has demonstrated her ability to appropriately read, understand and interpret the IBC to the court's satisfaction.

For reasons that should be apparent to anyone reviewing the pertinent testimony, the court finds the testimony of the plaintiffs' expert to be of no value. The court finds Mr. Carmichael's interpretation of the IBC is flawed. His opinion that the rail system violated the building code in some respects, even if credited, is of no value to this analysis because the purported code violations are not causally linked to Mrs. Heinz's fall. Mr. Carmichael did not show that the purported code violations related in any way to the creation of a defective condition that would have caused a tripping hazard. His testimony involved the defendant's alleged failure to comply with building codes that related to accessibility for handicapped persons and ingress and egress through the aisles. Mrs. Heinz is not in the group of people the handicapped-accessibility provisions were designed to protect and the testimony regarding ingress/egress is not relevant because cause of the fall had nothing to do with inadequate ingress or egress to or from the meat cases. The court finds the argument that the bumper guards would not have existed if the IBC had been followed is fallacious and cannot be credited.

Ms. Kelley's testimony establishes that the defendant's meat counter with bumper guard does not violate the IBC. The defendant meets the ingress/egress standards of the IBC because it provides an aisle width in front of the meat counter and rail that is greater than 36" at its narrowest point. The court further finds that the IBC's "obstruction provision" is not applicable because the bumper guard does not encroach on the required 36" aisle width. With regard to the accessibility code provisions, the court credits Ms. Kelley's testimony that the IBC does not require access to this counter because it is not a service counter as defined by the IBC. The meat counter is nonetheless accessible from the side by a wheel chair because the front edge of the counter is less than 36" high. Additionally,

10

the 4-inch protrusion of the bumper guard from the counter's vertical plain does not significantly restrict side access.  And finally, the approach allows an adequate side reach. There is no evidence that any code provisions prohibit or restrict vertical supports for such guard rails.

The only evidence on which the court could base a finding that the premises were unsafe or unreasonably dangerous are the alleged code violations that the court discredits. The only other evidence of an unsafe or dangerous condition is Mrs. Heinz's lay opinion. The fact that an accident occurred, however, does not establish liability.  There was no credible expert testimony that the design or construction of the bumper guard and its vertical support element is unsafe.  The bumper guard and support element are open, obvious and visible to reasonably watchful customers.  Similar bumper guard systems are in use elsewhere.

There is no evidence that the Commissary management knew of any potential tripping hazard presented by the rail system before Mrs. Heinz's accident.  The single allusion to a prior fall near the meat counter is not sufficient to put the owner on notice of a dangerous condition.  The evidence shows only that there may have been a prior fall in the vicinity of the meat cases.  There is no evidence that the earlier fall had been reported to management or that the incident involved circumstances similar to those at issue herein. Plaintiffs have not shown that the defendant should have realized a condition that involved an unreasonable risk of harm to the plaintiff.  The rail system was installed according to manufacturer's recommendations and is used by other grocery stores in the area.  The Commissary had a high volume of customers and had not had other complaints about or

reported accidents involving the rail system.  The evidence shows the Commissary was clean and well-lit.

Mrs. Heinz was familiar with the area around the meat cases and had numerous opportunities to view the railing system on approach to the meat counters.  The rails and supports were open and obvious.  No evidence suggests that the defendant should have realized that its customers would fail to notice or fail to protect themselves from tripping on the rails.  In any event, the court need not consider whether the defendant should have expected that lawful visitors would either fail to discover or realize the danger or fail to protect themselves against the danger because the plaintiffs have not shown the railings created any danger.  Alternatively, whatever danger was presented, the court finds the bumper system is in plain sight, is in common use elsewhere, and would be obvious to any individual exercising ordinary care for his or her own safety.  There is no proof of any other incidents, accidents, or complaints that would have made it foreseeable to the defendant that such an accident would occur.

The court finds that the plaintiffs did not meet their burden to prove that the defendant breached its duty to provide a reasonably safe premises.  The court observes that the bumper guard and its support element may not be the best or safest means to prevent counter damage by grocery carts.  However, the law only requires the defendant to use reasonable care to provide a safe premises.   A customer, keeping a reasonable lookout, should be aware of the bumper guard system and take the necessary steps to safely negotiate at the meat cases without tripping over the guard rail or its supports.  In light of these findings, the court need not address issues of causation and foreseeability.

THEREFORE, IT IS ORDERED:

1.   The parties' respective motions for judgment as a matter of law are denied as moot.

2.   The court finds in favor of the defendant and against the plaintiffs on their claims.

3.   A judgment in conformity with these Findings of Fact and Conclusions of Law will be entered this date.

DATED this 7th day of June, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.